IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION ("THE UNION") § § § § § § vs. § § § LYONDELL-CITGO REFINING CO., § LTD. ("LCR") § | CIVIL ACTION NO. 4:06-cv-02229 |

MEMORANDUM AND ORDER

The Union brings this action asking the Court to declare that LCR has violated the collective bargaining agreement ("CBA") between the Union and LCR. Both parties have filed motions for summary judgment. After these dispositive motions were filed, the Union requested leave to amend its complaint. For the reasons that follow, LCR's Motion for Summary Judgment is **GRANTED**, and the Union's Motion is **DENIED**. The Union's request to amend its Complaint is **DENIED AS MOOT**.

I. BACKGROUND

A. Uncontested Facts

There is no dispute that the parties entered into the CBA in 2001, which governed their relationship at all times material to this case. At the time of the CBA's execution, no preferred provider open network managed care health plan ("PPO") existed. In 2003, the Union-represented current hourly employees considered and rejected an opportunity to be transferred from their existing point-of-service managed health care plan ("POS") to a PPO. Instead, LCR transferred non-represented employees and all current retirees (both non-represented as well as formerly represented) into a PPO. All currently represented employees, because of their

rejection of a transfer, continued to be covered by the POS. Likewise, the medical coverage for future retirees (post-January 1, 2004) who previously were Union-represented current hourly employees also continued to be provided under the POS. The Union did not, and does not represent retirees, but does represent some within the class of "future retirees" because that term includes represented employees still working at LCR.

In November 2004, LCR unilaterally decided to place hourly employees who retired subsequent to January 1, 2004, in the PPO, effective January 1, 2005. In a letter sent out on November 23, 2004, LCR gave notice to the Union that, effective January 1, 2005, the Lyondell-Citgo Managed Care Health Plan for Non-Represented Employees would provide retiree medical coverage to all retirees who retired prior to January 31, 2006. The Union made no response to this letter. As a result of the transfer of the retirees from the POS to the PPO, the health care coverage premiums of those transferred significantly decreased.

On or about October 18, 2005, LCR decided unilaterally to amend the PPO, specifically with regard to retiree medical coverage, and LCR communicated this decision to Union officials. It is this communication that became the basis of the Union's grievance. In addition to changing benefits under the PPO, LCR decided unilaterally to extend coverage of its November 23, 2004 letter so as to continue until further notice to provide retiree medical coverage under the PPO. The latter decision would have meant that currently represented employees, upon their retirement, would be covered by the PPO rather than the POS.[1]

In a letter sent on November 7, 2005, the Union objected to LCR's proposal to transfer retirees, who had previously been represented hourly employees prior to their retirement, from

---

[1] Previously, on or about October 24, 2005, LCR had notified the Union of its intention unilaterally to transfer retirees who were previously Union-represented hourly employees prior to their retirement. Both the Union and LCR understood that the notice did not refer to any change in the benefits of current Union represented hourly employees.

the POS to the PPO. On November 17, the Union filed Grievance 0-35-05, which alleged LCR had breached the CBA when it "announced to USW Officials that benefits for present and future retirees would be altered as a result of Medicare changes." The term "future retirees" as used in the Grievance included Union-represented current hourly employees.

Following the filing of the Grievance, LCR informed the Union that the Company would not proceed with its proposed continued inclusion of hourly employees who retired after June 16, 2005, the effective date of the current bargaining agreement, in the PPO. Rather, LCR stated, retiree medical coverage for active represented employees who retired after June 16, 2005 would be provided under the current POS plan design, not the PPO. However, LCR did implement its proposed change to benefits under the PPO.

LCR's changes to the PPO, which took effect on January 2, 2006, affected the then current retirees under the PPO, but not any then current hourly employees covered under the POS plan. Retirees who were in the PPO plan were not moved out of it.

## II. STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter fo law based on the evidence thus far presented. See Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in

the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### III. WHETHER THE UNION REQUESTED ARBITRATION

The Union's primary argument is that this Court should refer to arbitration, and not decide for itself, the grievance it filed under the CBA. This is not, however, quite what was sought in its Complaint. Rather, the Complaint sought a declaration from the Court that LCR had breached the CBA. It is for this reason that the Union seeks, after discovery has concluded and after the dispositive motions have been filed, to amend its Complaint. Nonetheless, because some of the language in the existing Complaint could conceivably be read as seeking referral to arbitration, and for purposes of completeness, the Court is willing to consider the pending Complaint as both asking for a finding of breach of contract and as seeking a referral to arbitration. The request for leave to amend is, therefore, **DENIED AS MOOT.**

### IV. IS ANY PART OF THE DISPUTE SUBJECT TO ARBITRATION?

The law on arbitration is well-established and familiar. Under the Labor Management Relations Act, the question before a court is whether there is an arbitration clause in the collective bargaining agreement that covers the dispute. *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960). The court is not to opine on the merits of the dispute, but decide only whether the arbitration clause in the agreement is "susceptible of an interpretation that covers the asserted dispute." *Id.* "Doubts should be resolved in favor of coverage." *Id.*

Article 30 of the CBA in question gives the Union the right to "institute grievances concerning any alleged violation of this Agreement by filing written complaint with the Company." Where an agreement permits the employer's actions, however, "there [is] no breach

of contract as a matter of law." *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 286 (5th Cir. 1988). In other words, a party need "submit his grievance to arbitration only if he has contracted to do so." *Gateway Coal Co. v. Mine Workers of America*, 414 U.S. 368, 374 (1974).

The language of the grievance filed by the Union therefore needs to be reviewed. In pertinent part, it states that:

> After agreeing to an extension of the 2002 contract with USW in early 2005, on October 18, 2005 LCR Human Resources Management announced to USW Officials that benefits for present and future retirees would be altered as a result of Medicare changes. This was done outside of any bargaining of these benefits for future Lyondell-Citgo Refiners, LP retirees.

The parties agree that LCR never implemented any changes to the POS. In a Joint Statement of the Parties which was filed with this Court, LCR and the Union agreed that:

> At all times material herein, the Company did not make any unilateral changes to the Lyondell-Citgo Managed Health Care Plan for Represented Employees.

The question becomes, therefore, whether LCR ever agreed to arbitrate an "announcement" of a proposed change in the PPO when the announced change, in fact, never took effect. Article 30 of the CBA defines a "grievance . . . to be any difference regarding wages, hours or working conditions between the parties or between the Company and an employee covered by this Agreement." Although this language is broad, the Court does not believe it can be stretched to include a circumstance in which, in response to the Union's opposition, LCR abandoned any intent it had to make any changes in health coverage for represented employees. A contrary holding would presumably subject to grievance any

statement made by LCD in the course of negotiations. If the Union had wanted such an expansive, right, it should have negotiated far different language in the CBA.[2]

## V. CONCLUSION

LCR's Motion for Summary Judgment is **GRANTED,** and the Union's Motion for Summary Judgment is **DENIED**. The Union's motion to amend the complaint is **DENIED AS MOOT.** Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

SIGNED this 14th day of August, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.

---

[2]The changes that were made affecting employees not represented by the Union are *clearly* not encompassed in the CBA's grievance procedure. Further, The PPO, as already noted, did not exist at the time the CBA was entered and is not covered by it.